# BROOKS *v.* UNITED STATES.

NO. 388.

Argued March 2, 1949.—Decided May 16, 1949.

*Whiteford S. Blakeney* argued the cause and filed a brief for petitioners.

*Paul A. Sweeney* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Morison* and *Morton Hollander.*

Mr. Justice Murphy delivered the opinion of the Court.

This is a suit against the United States under the Federal Tort Claims Act, 60 Stat. 842, 28 U. S. C. (1946 ed.) § 931, now 28 U. S. C. § 2674. The question is whether members of the United States armed forces can recover under that Act for injuries not incident to their service. The District Court for the Western District of North Carolina entered judgment against the Government, rendering an unreported opinion, but the Court of Appeals for the Fourth Circuit reversed, in a divided decision. 169 F. 2d 840. We brought the case here on certiorari because of its importance as an interpretation of the Act. 335 U. S. 901.

The facts are these. Welker Brooks, Arthur Brooks, and their father, James Brooks, were riding in their automobile along a public highway in North Carolina on a dark, rainy night in February, 1945. Arthur was driving. He came to a full stop before entering an intersection, and proceeded across the nearer lane of the intersecting road. Seconds later the car was struck from the left by a United States Army truck, driven by a civilian employee of the Army. Arthur Brooks was killed; Welker and his father were badly injured.

Welker and the administrator of Arthur's estate brought actions against the United States in the District Court. The District Judge tried the causes without a jury and found negligence on the part of the truck driver. The Government moved to dismiss on the ground that Welker and his deceased brother were in the armed forces of the United States at the time of the accident, and were therefore barred from recovery. The Court denied the motion, entered a $25,425 judgment for the decedent's estate, and a $4,000 judgment for Welker.[1] On appeal,

---

[1] James Brooks, the father, also recovered judgment in his own right. The Government does not contest his recovery.

however, the Government's argument persuaded the Court of Appeals to reverse the judgment, Judge Parker dissenting.

We agree with Judge Parker. The statute's terms are clear. They provide for District Court jurisdiction over *any* claim founded on negligence brought against the United States. We are not persuaded that "any claim" means "any claim but that of servicemen." The statute does contain twelve exceptions. § 421. None exclude petitioners' claims. One is for claims arising in a foreign country. A second excludes claims arising out of combatant activities of the military or naval forces, or the Coast Guard, during time of war. These and other exceptions are too lengthy, specific, and close to the present problem to take away petitioners' judgments. Without resorting to an automatic maxim of construction, such exceptions make it clear to us that Congress knew what it was about when it used the term "any claim." It would be absurd to believe that Congress did not have the servicemen in mind in 1946, when this statute was passed. The overseas and combatant activities exceptions make this plain.

More than the language and framework of the act support this view. There were eighteen tort claims bills introduced in Congress between 1925 and 1935.[2] All but two[3] contained exceptions denying recovery to members of the armed forces. When the present Tort Claims Act

---

[2] H. R. 12178, 68th Cong., 2d Sess.; H. R. 12179, 68th Cong., 2d Sess.; S. 1912, 69th Cong., 1st Sess.; H. R. 6716, 69th Cong., 1st Sess.; H. R. 8914, 69th Cong., 1st Sess.; H. R. 9285, 70th Cong., 1st Sess.; S. 4377, 71st Cong., 2d Sess.; H. R. 15428, 71st Cong., 3d Sess.; H. R. 16429, 71st Cong., 3d Sess.; H. R. 17168, 71st Cong., 3d Sess.; H. R. 5065, 72d Cong., 1st Sess.; S. 211, 72d Cong., 1st Sess.; S. 4567, 72d Cong., 1st Sess.; S. 1833, 73d Cong., 1st Sess.; H. R. 129, 73d Cong., 1st Sess.; H. R. 8561, 73d Cong., 2d Sess.; H. R. 2028, 74th Cong., 1st Sess.; S. 1043, 74th Cong., 1st Sess.

[3] H. R. 8561, 73d Cong., 2d Sess.; H. R. 12178, 68th Cong., 2d Sess.

was first introduced, the exception concerning servicemen had been dropped.[4]  What remained from previous bills was an exclusion of all claims for which compensation was provided by the World War Veterans' Act of 1924—43 Stat. 607, 38 U. S. C. § 421, compensation for injury or death occurring in the first World War.  H. R. 181, 79th Cong., 1st Sess.  When H. R. 181 was incorporated into the Legislative Reorganization Act, the last vestige of the exclusion for members of the armed forces disappeared.  See also Note, 1 Syracuse L. Rev. 87, 93–94.

The Government envisages dire consequences should we reverse the judgment.[5]  A battle commander's poor judgment, an army surgeon's slip of hand, a defective jeep which causes injury, all would ground tort actions against the United States.  But we are dealing with an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired.  Were the accident incident to the Brooks' service, a wholly different case would be presented.  We express no opinion as to it, but we may note that only in its context do *Dobson* v. *United States*, 27 F. 2d 807, *Bradey* v. *United States*, 151 F. 2d 742, and *Jefferson* v. *United States*, 77 F. Supp. 706, have any relevance.  See the similar distinction in 31 U. S. C. § 223b.  Interpretation of the same words may vary, of course, with the consequences, for those consequences may provide insight for determination of congressional purpose.  *Lawson* v. *Suwannee Fruit & Steamship Co.*,

---

[4] Other bills after those mentioned in note 2, above, also omitted this exception.  See, *e. g.*, H. R. 5373, 77th Cong., 1st Sess.; H. R. 1356, 78th Cong., 1st Sess.  This has nothing to do with "congressional awareness" of the *Dobson* and *Bradey* decisions, *infra*.  The present Tort Claims Act contains exceptions which would have been specifically covered by those cases.  § 421 (d).

[5] The Government's other arguments on this phase of the case are sleeveless.  They will not be discussed.

336 U. S. 198. The Government's fears may have point in reflecting congressional purpose to leave injuries incident to service where they were, despite literal language and other considerations to the contrary. The result may be so outlandish that even the factors we have mentioned would not permit recovery. But that is not the case before us.

Provisions in other statutes for disability payments to servicemen, and gratuity payments to their survivors, 38 U. S. C. § 701, indicate no purpose to forbid tort actions under the Tort Claims Act. Unlike the usual workman's compensation statute, e. g., 33 U. S. C. § 905, there is nothing in the Tort Claims Act or the veterans' laws which provides for exclusiveness of remedy. *United States* v. *Standard Oil Co.,* 332 U. S. 301, indicates that, so far as third party liability is concerned. Nor did Congress provide for an election of remedies, as in the Federal Employees' Compensation Act, 5 U. S. C. § 757. Thus *Dahn* v. *Davis,* 258 U. S. 421, and cases following that decision, are not in point. Compare *Parr* v. *United States,* 172 F. 2d 462. We will not call either remedy in the present case exclusive, nor pronounce a doctrine of election of remedies, when Congress has not done so. Compare 31 U. S. C. § 224b, specifically repealed by the Tort Claims Act, § 424 (a). In the very Act we are construing, Congress provided for exclusiveness of the remedy in three instances, §§ 403 (d), 410 (b), and 423, and omitted any provision which would govern this case.

But this does not mean that the amount payable under servicemen's benefit laws should not be deducted, or taken into consideration, when the serviceman obtains judgment under the Tort Claims Act. Without the benefit of argument in this Court, or discussion of the matter in the Court of Appeals, we now see no indication that Congress meant the United States to pay twice for the same injury. Certain elements of tort damages may be the equivalent of elements taken into account in providing disability

payments. It would seem incongruous, at first glance, if the United States should have to pay in tort for hospital expenses it had already paid, for example. And whatever the legal theory behind a wrongful death action, the same considerations might apply to the Government's gratuity death payment to Arthur Brooks' survivors, although national service life insurance might be considered a separate transaction, unrelated to an action in tort or other benefits.

But the statutory scheme and the Veterans' Administration regulations may dictate a contrary result. The point was not argued in the case as it came to us from the Court of Appeals. The court below does not appear to have passed upon it; it was unnecessary, in the view they took of the case. We do not know from this record whether the Government objected to this portion of the District Court judgment—nor can we tell from this record whether the Court of Appeals should consider a general objection to the judgment sufficient to allow it to consider this problem. Finally, we are not sure how much deducting the District Judge did. It is obvious that we are in no position to pass upon the question of deducting other benefits in the case's present posture.

We conclude that the language, framework and legislative history of the Tort Claims Act require a holding that petitioners' actions were well founded. But we remand to the Court of Appeals for its consideration of the problem of reducing damages *pro tanto,* should it decide that such consideration is proper in view of the District Court judgment and the parties' allegations of error.

*Reversed and remanded.*

MR. JUSTICE FRANKFURTER and MR. JUSTICE DOUGLAS dissent, substantially for the reasons set forth by Judge Dobie, below, 169 F. 2d 840.