

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-4-2006

# Ruggiero v. USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1315

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Ruggiero v. USA" (2006). *2006 Decisions.* Paper 1795.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1795

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 05-1315
_____

JOHN J. RUGGIERO;
CAROL A. RUGGIERO,
Individually and on behalf of the Estate of
John Paul Vito Ruggiero,

Appellants

v.

UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 04-cv-00500)
District Judge: Honorable A. Richard Caputo
_____

Argued December 7, 2005

Before: RENDELL, FISHER, and GREENBERG, <u>Circuit Judges</u>

(Filed January 4, 2006)


David P. Tomaszewski [ARGUED]
Borland & Borland
69 Public Square, 11th Floor
Wilkes-Barre, PA 18701

*Counsel for Appellants*
*John J. Ruggiero;*
*Carol A. Ruggiero,*
*Individually and on behalf of the Estate of John Paul Vito Ruggiero*

Stephen R. Cerutti, II
Office of United States Attorney
228 Walnut Street
220 Federal Building and Courthouse
Harrisburg, PA 17108

*Counsel for Appellee*
  *United States of America*

Lowell V. Sturgill, Jr.  [ARGUED]
U.S. Department of Justice
Civil Division, Appellate Staff
Room 9140-PHB
601 D Street, N.W.
Washington, DC 20530

*Counsel for Appellee*
  *United States Department*
   *Of the Navy*

_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit Judge</u>.

This case requires us to apply the Supreme Court's holding in *Feres v. United States*, 340 U.S. 135, 137 (1950).  The *Feres* doctrine, as it has come to be called, bars suits by service members for injuries that "arise out of or are in the course of activity incident to service." *Id.* at 146.  Though we have serious concerns about the analytical underpinnings of the *Feres* doctrine and the wisdom of applying it as broadly as this

2

Court has in the past, precedent requires that we affirm the District Court's order dismissing the instant suit.

I.

The facts of this case are not in dispute. Appellants John and Carol Ruggiero (the "Ruggieros") brought suit on behalf of the estate of their son, John Paul Ruggiero ("MIDN Ruggiero"), who was entering his third year at the Naval Academy at the time of his death. Like every other student at the Naval Academy, MIDN Ruggiero lived in Bancroft Hall. Every midshipman is required to sign in and be accounted for at taps, which were conducted at 1:00 a.m. on the night in question. Upperclassmen need not go to bed at taps but, when they do sleep, they are required to do so in their own beds.

On August 16, 2002, MIDN Ruggiero and his two roommates submitted a "Bancroft Hall Berthing Check-In Sheet," on which they listed as missing one window screen from their dorm room. At 12:30 a.m. on August 18, 2002, MIDN Ruggiero returned to the Academy intoxicated after a night on liberty. A classmate watched him get into bed at 1:30 a.m., seemingly without incident. At 6:15 a.m., one of his roommates noticed that MIDN Ruggiero was not in his bed. On or about 7:16 a.m., he was found dead on the tennis court, fifty three feet below his fourth floor dorm room window. It is unclear exactly when or how Ruggiero fell from the window.

On May 16, 2003, the Ruggieros filed an administrative claim concerning their son's death. The Department of the Navy rejected the claim, and the Ruggieros timely

3

filed a complaint in the District Court for the Western District of Pennsylvania against the United States and the Navy. The complaint alleged that the Naval Officers supervising MIDN Ruggiero's company were aware of the missing screen in his dorm room. The Ruggieros also alleged that supervising officers were aware that students used window sills as a step up to the midshipmen's beds. They claimed that the Navy had breached its duty to ensure that the dormitory rooms in Bancroft Hall were safe for habitation. The District Court dismissed their claim as barred by *Feres*.

## II.

In *Feres*, the Supreme Court held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146. The Court has adopted "three broad rationales" for this approach. *United States vs. Johnson*, 481 U.S. 681, 688 (1987). The first is that the distinctively federal relationship between soldiers and the military requires a uniform federal remedy for service-related injuries. *Id.* at 689. Second, "the existence of . . . generous statutory disability and death benefits" for soldiers suggests that Congress did not intend to waive the United States' sovereign immunity with respect to injuries arising out of service. *Id.* at 690. Finally, judicial review of military decisions that lead to service-related injuries would undermine the discipline and loyalty the armed forces need to fulfill their mission. *Id.* at 690-91.

4

Two cases control the factual situation before us. The first is *Feres* itself. Rudolph Feres, an active-duty service member, was killed in a fire while sleeping in his barracks. His executrix claimed that the United States was negligent "in quartering him in barracks known or which should have been known to be unsafe because of a defective heating plant, and in failing to maintain an adequate fire watch." *Feres v. United States*, 340 U.S. 135, 137 (1950). The Court held that Feres' death occurred incident to his service in the military and was therefore not actionable under the Federal Tort Claims Act. *Id.* at 144.

The similarities between Feres' death and Ruggiero's are clear. Both deaths occurred on a military installation and in a military residence. Both Feres and Ruggiero were service members, but neither appear to have been actively performing any military duties at the time of their deaths. In both cases, the plaintiffs alleged that the military's negligence in maintaining the residence caused the service member's death. Given the factual similarities between the two cases, *Feres* should bar Ruggiero's claim.

The second precedent that controls here is *Richards v. United States*, 176 F.3d 652 (3d Cir. 1999). To assist the inquiry into whether a service member's injury is "incident to service," we adopted a three-part analysis that considers "(1) the service member's duty status; (2) the site of the accident; and (3) the nature of the service member's activity at the time of injury." *Id.* at 655. Weighing these factors in light of the totality of the circumstances, and viewing no one factor as dispositive, we held in

5

*Richards* that *Feres* divested the district court of jurisdiction over the plaintiff's claim. *Id.* at 655-56.

The same factors all weigh in favor of applying *Feres* to the instant case. Ruggiero was a midshipman at the Naval Academy at the time of his death. His accident occurred at the Academy dorm, where every midshipman is required to reside. Ruggiero's military service was the but-for cause of his presence in the dorm on the night of his death. *Richards* demonstrates that it is not the activity a service member is performing when injured that is important for purposes of *Feres*, but rather the *reason* the service member is doing the activity. *See id.* at 656. In this case, MIDN Ruggiero returned to his dorm room drunk before 1:00 a.m. and slept in his own bed in order to comply with standing military orders that we may not second guess. Under these circumstances, we are compelled by *Richards* to find that MIDN Ruggiero's death was incident to his service and therefore barred by *Feres*.

III.

The Ruggieros cite several cases from the Ninth and Eleventh Circuits that suggest a different conclusion. *See Dreier v. United States*, 106 F.3d 844 (9th Cir. 1997); *Elliot v. United States*, 13 F.3d 1555 (11th Cir. 1994); *Green v. Hall*, 8 F.3d 695 (3d Cir. 1993); *Johnson v. United States*, 704 F.2d 1431 (9th Cir. 1983). Relying in large part on *Brooks v. United States*, 337 U.S. 49 (1949), these cases prescribe

reasonable limits to the *Feres* doctrine; unfortunately, they are not the limits that we have adopted.

For thirty years, members of this Court have repeatedly stated their opposition to applying the *Feres* doctrine broadly. *See Richards*, 180 F.3d at 564 (Rendell, J., dissenting from denial of petition for rehearing); *Richards*, 176 F.3d at 657; *O'Neill v. United States*, 140 F.3d 564, 565 (3d Cir. 1998) (Becker, J., dissenting from denial of petition for rehearing); *Hinkie v. United States*, 715 F.2d 96, 97 (3d Cir. 1983); *Thomason v. Sanchez*, 539 F.3d 955, 957 (3d Cir. 1976). In addition, several members of the Supreme Court have argued that *Feres* should be overruled because the decision lacks any textual support. *Johnson*, 481 U.S. at 692 (Scalia, J., dissenting). We share these concerns, however, "attempts by members of this [C]ourt to limit the *Feres* doctrine have been consistently unsuccessful." *Martinelli v. United States*, 812 F.2d 872, 874 (3d Cir. 1987). We have no choice but to apply *Feres* to the instant case, despite the harshness of the result and our concern about the doctrine's analytical foundations. We will, therefore, AFFIRM the District Court's order.

_____